Plaintiff is the president of Local 100, Transport Workers *538 Union of Greater New York (the Union). The Union is the exclusive collective bargaining representative of approximately 32,000 workers employed by various subordinate bodies and affiliates of the Metropolitan Transportation Authority, including defendants, New York City Transit Authority (TA) and Manhattan and Bronx Surface Transit Authority (MaBSTOA). MaBSTOA was created by the legislature in 1962, after the City of New York seized several privately owned and operated bus lines through its eminent domain power. Public Authorities Law § 1203-a (2) was the enabling legislation that allowed the condemned assets to be conveyed to the new authority, a subsidiary corporation of the TA. The status of officers and employees of MaBSTOA was addressed in Public Authorities Law § 1203-a, the subject of this dispute. It provided, in pertinent part: “Said officers and employees shall not become, for any purpose, employees of the city or of the [TA] and shall not acquire civil service status or become members of the New York city employees’ retirement system” (NYCERS) (Public Authorities Law § 1203-a [3] [b]).
Although the arrangement outlined above was originally intended to operate “for a temporary period” (Public Authorities Law § 1203-a [2]), it has continued for 50 years. Over the years, the two authorities have remained separate legal entities. Indeed, the TA is extremely vigilant against efforts to recover from it tort damages arising out of accidents caused by MaBSTOA operators and equipment. Nevertheless, the two organizations have developed, as a practical matter, functional overlap. For example, they share common resources, such as office facilities and a personnel department.
From 1999 to 2002, the terms of employment for both TA and MaBSTOA employees were governed by a collective bargaining agreement (CBA) that provided that any layoffs of MaBSTOA employees would occur in reverse order of seniority, based upon date of hire. There was no similar provision in that agreement concerning TA workers, because their layoffs were governed by the Civil Service Law. Also under the terms of the CBA, MaBSTOA employees could pick only jobs associated with the bus lines operated by MaBSTOA, and TA employees could pick only jobs associated with bus lines and subways operated by the TA.
In December 2002, the TA and MaBSTOA executed a “Memorandum of Understanding” with the Union (the MOU), which, inter alia, modified the CBA to provide for the consolidation of MaBSTOA and TA surface transit operations. The MOU, also referred to as “Attachment E,” provided, in pertinent part:
*539 “The Authority and the Union agree to the elimination of the artificial distinction between MaBSTOA and the Transit Authority. To that end, the parties agree as follows:
“(1) Effective 90 days after final ratification all impediments to the free movement and commingling of equipment and personnel between MaBSTOA and Transit Authority shall be eliminated except as modified herein or by agreement of the parties.
“(2) Effective that same day, all contractual pay and work practices at MaBSTOA shall be standardized at the Transit Authority level . . .
“(3) Employees hired after the effective date of this agreement will be hired in the same ratio as the prior three-year average (Civil Service/Non-Civil Service Ratio). The ratio shall be established for each covered title.”
In August 2003, the parties executed a consolidation agreement, which created uniform probationary employment rules, a uniform disciplinary system, and uniform sick leave rules. It resolved various problems that had arisen in the course of consolidating the TA and MaBSTOA surface transit employees. To further effectuate the MOU, the parties established a joint job pick procedure, which allowed MaBSTOA employees to “pick into” TAjobs and TA employees to “pick into” MaBSTOA jobs. Under this new procedure, employees of each authority would pick their jobs in an order established by a single, integrated seniority list, known as the “Consolidated Seniority List.” Employees hired prior to December 2, 2004, were “grandfathered in,” to the extent that MaBSTOA workers had first pick of “MaBSTOA” jobs before those jobs were made available to TA employees, and vice versa. Employees hired into either Authority after December 2, 2004 picked from any available job, regardless of whether it was a TA job or a MaBSTOA job.
The complaint alleges that “as a result of’ the MOU and the consolidation agreement, “employees of [MaBSTOA] are, for almost all purposes, employees of [the TA]. [MaBSTOA] employees regularly work in [TA] facilities; they receive job assignments, direction and supervision from [TA] supervisors. [MaBSTOA] employees are disciplined and in some cases terminated by [TA] officials. [MaBSTOA] employees are paid from an account maintained by the [TA]. Other than not having civil service status or participating in a different pension system, [MaBSTOA] employees working for [TA] are for all purposes indistinguishable from [TA] employees.” Plaintiff asserts that this directly violates the prohibition in Public Authorities Law § 1203-a (3) (b) against MaBSTOA employees becoming, “for *540 any purpose, employees of the city or of the [TA].” Plaintiff seeks a judgment declaring that no MaBSTOA employee may be treated as an employee of the TA for any purpose, and that the MOU and consolidation agreement are void and unenforceable to the extent that they have effectively made employees of MaBSTOA into employees of the TA. Plaintiff further seeks a judgment restraining defendants from taking any action in accordance with the 2002 MOU and 2003 consolidation agreement that is prohibited under the Public Authorities Law, or that adversely affects the employment of any employee of MaBSTOA.
Defendants moved, pursuant to CPLR 3211 (a) (1), (2), (4) and (7) for an order dismissing the complaint. In support of their motion, defendants argued that, since the parties’ agreements are valid on their face and enforceable, plaintiff failed to state a cause of action. In addition, defendants argued that, since the Union had reaped the benefit of the agreements, it was equitably estopped from suing to invalidate them. Defendants also invoked the doctrine of judicial estoppel, which was based on the fact that in two CPLR article 75 proceedings, the Union had sought to enforce the agreements. Defendants also contended that the action was barred by operation of the statute of limitations and laches. Finally, defendants sought a change of venue to Kings County, where an appeal from one of the article 75 proceedings was still pending.
The motion court rejected defendants’ estoppel and procedural arguments. However, the court dismissed the complaint, finding that it failed to state a cause of action because nothing in the MOU or consolidation agreement indicated that MaBSTOA employees would gain civil service status or become members of NYCERS.
In interpreting any statute, we are required, first and foremost, to pay heed to the intent of the legislature, as reflected by the plain language of the text (see Majewski v BroadalbinPerth Cent. School Dist., 91 NY2d 577, 583 [1998]). In addition, ££[i]n construing statutes, it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning” (id. [internal quotation marks omitted]).
We are also mindful of the fact that the issues herein are presented on a motion to dismiss pursuant to CPLR 3211. Accordingly, the pleading is to be afforded a liberal construction, the facts alleged in the complaint are to be accepted as true, and plaintiff is to be accorded the benefit of every possible favorable inference (Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
*541 Again, the language we are required to interpret is as follows: “[MaBSTOA] officers and employees shall not become, for any purpose, employees of the city or of the [TA] and shall not acquire civil service status or become members of [NYCERS]” (Public Authorities Law § 1203-a [3] [b]). In our view, this plainly means that three separate prohibitions apply to MaBSTOA employees: (1) that they “shall not become, for any purpose,” employees of the TA; and (2) that they shall not acquire civil service status; and (3) that they shall not become members of NYCERS. Accordingly, we agree with the Union that, to the extent that the MOU and consolidation agreement, by merging many of the policies of the two authorities, such as probationary employment rules, disciplinary rules, and sick-leave rules, transform MaBSTOA employees into employees of the TA, the agreements violate the first prohibition.
Defendants argue that the Union’s interpretation of the statute is wrong. However, in doing so, they never account for the fact that the “shall not become, for any purpose” clause stands distinctly apart from the other two clauses in the provision. Rather, they posit that “[t]he plain and obvious meaning of the ‘for any purpose’ language is to ensure that a MaBSTOA employee cannot, simply by virtue of employment by MaBSTOA, even in a contractually agreed upon commingled work force, acquire civil service status or membership in NYCERS.” The most glaring problem with this interpretation of course is that it is decidedly not what the statute says. The way the provision is written, the “and” creates a separation between the “for any purpose” clause and the rest of the sentence. It does not signal a modification to the “for any purpose” clause or in any way refer back to it. Furthermore, defendants’ interpretation renders the first prohibition superfluous, a result which “is to be avoided” (Matter of Branford House v Michetti, 81 NY2d 681, 688 [1993]).
In addition, defendants’ interpretation of the statute, with which the dissent agrees, would essentially substitute the phrase “for all possible purposes” for the words that are actually employed, “for any purposes.” In other words, defendants argue that if a MaBSTOA employee cannot, under any circumstances, be subject to the Civil Service Law or participate in NYCERS, they simply cannot be considered TA “employees,” rendering the first clause meaningless if not considered in the manner they urge. This approach is too narrow, for it pays no heed to the notion that different people working under the same employer can be classified differently. In other words, not every employee in an organization is similarly situated. Here, the *542 statute recognizes that MaBSTOA workers could become so integrated into the TA organization that they could be seen as TA employees, albeit without the protections of the Civil Service Law and the benefit of NYCERS participation. We simply discern nothing in the statutory language which confirms, as the dissent insists, that Civil Service Law protection is the “distinguishing” or “hallmark” quality of TA employment.
Contrary to the dissent’s observation, this approach is not in conflict with other provisions in the Public Authorities Law that might be interpreted as encouraging some standardization of the two agencies’ operations. None of the sections which the dissent cites (i.e., Public Authorities Law § 1204 [11], [15] and [17]) authorize MaBSTOA employees to take on qualities of being “employed” by the TA. Further, while Public Authorities Law § 1203-a (3) (d) authorizes MaBSTOA to “borrow” TA employees, there is no reciprocal provision. Since these sections have nothing to do with the nature of MaBSTOA employment, we fail to understand the dissent’s statement that our position creates “ambiguity” as to when MaBSTOA employees can be considered de facto employees of the TA.
Because we agree with the Union’s interpretation of Public Authorities Law § 1203-a (3) (b), and because the complaint sufficiently alleged facts establishing that the MOU and consolidation agreement had the effect of conferring on MaBSTOA workers qualities of “employment” by the TA, the motion court erred in dismissing the complaint as not having stated a cause of action.
We have considered defendants’ other arguments for dismissal and find them unavailing. Concur — Mazzarelli, J.P., Renwick and Manzanet-Daniels, JJ.